UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * *

United States of America,

        Plaintiff,

vs.                                REPORT AND
                                    RECOMMENDATION

Nicholas James Worden,

        Defendant.                  Crim. No. 10-243 (MJD/LIB)

* * * * * * * * * * * * * * * * * *

This matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1, on the Defendant's Motion to Suppress Statements, Admissions and Answers (Dkt. 13). A hearing was held on September 28, 2010, at which time the Defendant appeared personally, and by Manvir K. Atwal, Assistant Federal Defender, and the Government appeared by Michael A. Dees, Assistant United States Attorney. For the reasons that follow, the Court recommends that the Defendants' Motion to Suppress Statements, Admissions, and Answers be denied.

I. **BACKGROUND**

On September 9, 2010, the Defendant was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Defendant's motion to suppress challenges a statement that was given while he was in custody following his arrest on October 8, 2009. Defendant contends that this statement

should be suppressed because he was under the influence of methamphetamine at the time of his statement, and as a consequence, that the waiver of his Miranda rights was not voluntary.

The Government called Special Agent Nicolas Garlie, of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), to testify at the suppression hearing. Special Agent Garlie testified that he has been in law enforcement at the ATF for more than 9 years. Special Agent Garlie's primary duty is the investigation of violations of firearms and narcotics laws, which often involves interviewing suspects.

Special Agent Garlie testified that he was involved in an interview of the Defendant, which took place at approximately 2:00 p.m. on October 8, 2009, at the St. Louis County Jail. The Defendant had been arrested shortly after midnight on that date, and accordingly, the interview took place more than 12 hours after the arrest. In addition to Special Agent Garlie, Duluth Police Department Investigator Mike Erickson, and ATF Special Agent Darin Nemerow, were also present for the interview. Garlie, Erickson, and Nemerow were all in casual clothing at the time of the interview, which took place in an interview room that was approximately 8 feet by 8 feet, with three chairs, a table, and white walls. The Defendant was not handcuffed during the interview.

Special Agent Garlie testified that there was very little conversation prior to the Defendant being read his rights, and that the officers merely introduced themselves, and explained why they were there. Following these brief introductions, Investigator Erickson started a tape recording in order to document the Defendant's statement. Next,

Investigator Erickson read the Defendant his Miranda rights, and asked the Defendant if he understood all of the rights he had just been read. The Defendant indicated that he understood those rights. Erickson then asked Defendant if he still wanted to talk to them, and the Defendant said that he did. The officers proceeded with the interview of the Defendant, which lasted approximately 45 minutes. Special Agent Garlie testified that during the interview none of the law enforcement officers made any promises to the Defendant and they did not threaten the Defendant. At no point during the interview did the Defendant request an attorney or ask to end the interview.

In describing the Defendant's demeanor at the time of the interview, Special Agent Garlie stated that the Defendant appeared to be tired, and that he still appeared to be surprised, or "spinning," as a result of his arrest and the surrounding circumstances. Special Agent Garlie had previously observed individuals under the influence of methamphetamine at least a few times, as well as observing individuals under the influence of other drugs and alcohol, and he testified that the Defendant did not appear to be under the influence of methamphetamine at the time of the interview. Special Agent Garlie stated that based on his experience, the signs of being under the influence of methamphetamine include behavior that is characterized by paranoia, frequent looking around, sweating, and scratching, and that the Defendant was not exhibiting any of these behaviors. Special Agent Garlie also indicated that when a person is coming down from a methamphetamine high, they can be tired, angry, combative, and aggressive. Although the Defendant appeared to be tired, and surprised by the events surrounding his arrest, he did not exhibit

behavior that was angry, combative, or aggressive. Rather, according to Special Agent Garlie, the Defendant was cooperative during the interview, he did not appear to have any trouble understanding his rights, he did not have any trouble understanding the questions that were put to him, and he answered the questions appropriately. In addition, his speech was coherent, and the officers did not have to ask the Defendant to repeat himself. In addition, Special Agent Garlie stated that the Defendant did not lose consciousness or appear to black out during the interview.

Towards the end of the interview, the Defendant admitted that he had been using methamphetamine on the day of, and the day prior to, his arrest. At no time prior to this admission did any of the officers ask the Defendant if he was currently under the influence of methamphetamine. The Defendant had been arrested at a hotel, and Special Agent Garlie testified that in the course of his duties as the case agent on the Defendant's case, he had watched a video recording of the events at the hotel. Special Agent Garlie further testified that the Defendant appeared to have been under the influence of methamphetamine at the hotel. Special Agent Garlie acknowledged that the Defendant appeared to be "tweaking," which he described as behavior characterized by twitching, frequent looking around, and paranoia, and that an informant had also described the Defendant as being paranoid at the time of his arrest likely as a result of methamphetamine use.

At the time of the hearing, the Government offered an audio recording of the interview conducted on October 8, 2009, which was received into evidence for the

purposes of the suppression hearing without objection by the Defendant. The Court has conducted an independent review of that recording. Based on that review, the Court finds that the Defendant's speech was coherent; that he demonstrated that he was fully oriented to the circumstances of the interview; that he appeared to understand his Miranda rights and the questions that were put to him; that he did not appear to have any difficulty answering the officers' questions reasonably and appropriately; and that he remained claim during the course of the interview.

**II.    DISCUSSION**

The Defendant argues that he was incapable of effectively waiving his Miranda rights since he was under the influence of methamphetamine or coming down from a methamphetamine high at the time he gave his statement on October 8, 2009. The Government maintains that the evidence demonstrates that the Defendant's will was not overborne and that he was capable of understanding and waiving his Miranda rights at the time of his waiver, and therefore, that his statement should not be suppressed.

A suspect may waive his Miranda rights, thus rendering his statements to law enforcement admissible, "provided the waiver is made voluntarily, knowingly, and intelligently." Miranda v. Arizona, 384 U.S. 436, 444 (1966); United States v. Bell, 477 F.3d 607, 612 (8th Cir. 2007)("A defendant's statements after being advised of his Miranda rights may be used against him if he knowingly and voluntarily waived his rights"). "A waiver is voluntary if it 'was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" United States v. Harper, 466 F.3d 634, 643 (8th Cir.

2006), cert. denied, 549 U.S. 1273 (2007), quoting Moran v. Burbine, 475 U.S. 412, 421 (1986).  Stated differently, a waiver is not voluntary if the totality of the circumstances show that the defendant's will was overborne.  United States v. Annis, 446 F.3d 852, 855 (8th Cir. 2006), cert. denied, 551 U.S. 1163 (2007), citing United States v. Glauning, 211 F.3d 1085, 1087 (8th Cir. 2000).  The voluntariness determination requires courts to assess "the conduct of the law enforcement officials and the defendant's capacity to resist any pressure."  United States v. Pierce, 152 F.3d 808, 812 (8th Cir. 1998), citing United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990).  "A waiver is knowing and intelligent if made 'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  United States v. Harper, 466 F.3d at 643, quoting Moran v. Burbine, 475 U.S. at 421.  In determining whether a waiver was knowing and voluntary, the Court looks to the totality of the circumstances.  Id.

The Eighth Circuit has "repeatedly declined to adopt a per se rule of involuntariness when confronted with intoxication and/or fatigue."  United States v. Makes Room, 49 F.3d 410, 415 (8th Cir. 1995), citing United States v. Casal, 915 F.2d 1225, 1229 (8th Cir. 1990), cert. denied, 499 U.S. 941 (1991); see also, United States v. Annis, 446 F.3d at 856; United States v. Korn, 138 F.3d 1239, 1240 (8th Cir. 1998)("The Eighth Circuit has already stated that neither exhaustion nor intoxication will necessarily invalidate a Miranda waiver."), cert. denied, 525 U.S. 947 (1998).  Rather, with respect to individuals who are either intoxicated or fatigued, "the test is whether these mental impairments caused the defendant's will to be overborne."  United States v. Casal, 915 F.2d at 1229 [citing cases].         All of the

evidence before the Court indicates that the Defendant's waiver of his Miranda rights was knowing, intelligent, and voluntary. There is no dispute that the Defendant was in custody at the time he made the statement. Investigator Erickson read the Defendant his Miranda rights, and the Defendant acknowledged that he understood each of these rights, and he then orally agreed to speak with law enforcement in the absence of an attorney. The evidence establishes that the Defendant was not intimidated, coerced or deceived into cooperating with law enforcement, and that the interview was brief. The Defendant was calm and cooperative during the interview, and he exhibited no signs that he was not in full possession of his faculties.

The Court recognizes that the Defendant was under the influence of methamphetamine at the time of his arrest at the hotel, and that he argues that he was experiencing the signs of "coming down" from a methamphetamine high when he was interviewed, given his use of methamphetamine on the day of his arrest and the day prior to his arrest. However, the Court finds that the Defendant has failed to establish that Defendant's prior use of methamphetamine continued to affect him, or that it rendered him unable to exercise a free and deliberate choice at the much later time when he waived his Miranda rights. The interview took place more than 12 hours after the Defendant was arrested, and Special Agent Garlie testified that the Defendant did not appear to be under the influence of methamphetamine during the interview. Special Agent Garlie further stated that the Defendant indicated that he understood his rights; that the Defendant's speech was coherent; that the Defendant had no trouble understanding or answering questions; and

that the Defendant provided appropriate responses to the questions that were put to him. The Defendant has provided no evidence to contradict Special Agent Garlie's testimony, which was further corroborated by the Court's own review of the audio taped interview. Therefore, the Court finds that the Defendant was coherent, alert and oriented to his surroundings, and capable of understanding the nature of his rights and the consequences of waiving those rights, and accordingly, that his waiver was voluntary.

The Court has considered the Defendant's argument that Defendant's fatigue evidenced the fact that he was "coming down" from a methamphetamine high, and that the law enforcement officers did not ask the Defendant whether he was under the influence of methamphetamine when he waived his Miranda rights. However, until the end of the interview when the Defendant stated that he had used methamphetamine the night before, the agents had no objectively apparent reason to believe that the Defendant was presently under the influence of drugs when the interview began, as we have already explained. In addition, the Defendant exhibited no other objective signs of being under the influence of methamphetamine or coming down from a methamphetamine high. As we have already described, the evidence establishes Defendant's prior use of methamphetamine did not affect his ability to understand or waive his rights. The Defendant was fatigued, but there simply no evidence that he was not otherwise capable of voluntarily waiving his rights or that his will was overborne. See, United States v. Contreras, 372 F.3d 974, 977-978 (8th Cir. 2004)(finding the defendant's waiver voluntary even though the record revealed that the defendant "used methamphetamine the evening before and marijuana [on] the day"

in question, where both agents "testified that Contreras appeared to be sober and in control of his faculties at the time" he waived his Miranda rights), cert. denied, 546 U.S. 902 (2005); United States v. Casal, 915 F.2d at 1229 (finding that a suspect who recently used methamphetamine and had not slept for five days voluntarily waived his Miranda rights where police officers testified that they had no knowledge of these impairments and he did not act intoxicated); United States v. Gaddy, 532 F.3d 783, 788 (8th Cir. 2008)(finding waiver was not involuntary even though the defendant had consumed alcohol and drugs several hours before waiving his rights, because two agents testified that the defendant "appeared awake and coherent", and the defendant "did not tell them that he was tired, intoxicated or under the influence of drugs"), cert. denied, 129 S. Ct. 587 (2008); United States v. Makes Room, 49 F.3d at 415 ("Although Makes Room was intoxicated when arrested . . . , by the time he waived his rights thirteen hours later, the effects of the alcohol had worn off," which was established by the fact that the defendant told the agent that he was not intoxicated, and the fact that the agent's observations corroborated the defendant's statement); United States v. Annis, 446 F.3d at 856 (finding waiver was not involuntary where the defendant provided no evidence that his pain and methamphetamine withdrawal caused his will to be overborne, and the government established that the defendant "answered questions reasonably, even reading and reviewing his statements twice and signing the report," and the defendant made no complaints to the agent); United States v. Castanon, 88 Fed.Appx. 965, 967 (8th Cir. 2004)(rejecting defendant's argument that he could not voluntarily waive his Miranda rights because he was going through

methamphetamine withdrawal, where the investigating officers testified that the defendant exhibited none of the symptoms of being under the influence of methamphetamine, and the totality of the circumstances established that his will was not overborne).

Therefore, under the totality of the circumstances, the Court finds that the Defendant effectively waived his Miranda rights. The Court finds no reason to believe that the Defendant was incapable of understanding the rights that were read to him or the consequences of waiving them, or that he was incapable of understanding what he was doing. Stated otherwise, the totality of the circumstances establish that the Defendant's will was not overborne, and as a result, the Defendant's statement should not be suppressed.

### III. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

Defendant's Motion to Suppress Statements, Admissions, and Answers [Docket No. 13] be DENIED.

Dated: October 13, 2010

s/
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by October 27, 2010**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.